Case 4:21-mc-02391   Document 19   Filed on 08/30/22 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
August 30, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VENEQUIP, S.A., | § | |
| | § | |
| Petitioner, | § | |
| | § | MISCELLANEOUS ACTION NO. |
| VS. | § | 4:21-MC-2391 |
| | § | |
| MUSTANG MACHINERY COMPANY, LLC, | § | |
| | § | |
| | § | |
| Respondent. | § | |

## **MEMORANDUM OPINION AND ORDER**

In this miscellaneous proceeding, Petitioner Venequip, S.A. ("Venequip") seeks an application for discovery under 28 U.S.C. § 1782 from Respondent Mustang Machinery Company, LLC ("Mustang"). Venequip contends that this discovery is needed for judicial proceedings in Geneva, Switzerland. After careful consideration of the application, evidence submitted and responsive pleadings, Venequip's Section 1782 application (Dkt. 1) is **DENIED**.

### BACKGROUND

Mustang is a privately held Caterpillar dealership with its headquarters in Houston, Texas. Venequip, a former dealer for Caterpillar, initiated a judicial proceeding in Switzerland against Caterpillar S.A.R.L. ("CAT"), a Swiss company. That proceeding, to which Mustang is not a party, involves a contract dispute about the distribution of Caterpillar equipment and products in Venezuela. As for the facts at the heart of that dispute, Venequip and CAT had a long and sometimes productive business relationship

over the past two decades. The parties entered into written Distribution and Services Agreements ("Agreements") pursuant to which Venequip distributed, sold, and serviced Caterpillar equipment in Venezuela. According to Venequip, CAT terminated this business relationship in 2019. The events surrounding the termination are hotly disputed: Venequip accuses CAT of bad faith; CAT contends that Venequip defaulted on its contractual obligations. Under Swiss law, prior to the start of litigation, the case is subject to mandatory mediation, referred to as "conciliation." The parties are currently at this stage of the court proceedings.

Venequip now seeks an order requiring Mustang to provide testimony and produce a wide range of documents that Venequip contends will assist its ongoing investigations in Switzerland and demonstrate that CAT acted in bad faith with respect to Venequip and in violation of the Agreements. Venequip's application seeks discovery, encompassing over twenty-eight requests for production and twenty-two topics for a 30(b)(6) deposition, on a broad range of topics. This application is one of at least nine similar Section 1782 applications Venequip has submitted, in districts across the U.S., requesting discovery about this dispute from various Caterpillar dealers, customers, and former employees. Caterpillar objects to Venequip's application.

## LEGAL STANDARD

Generally, the Section 1782 analysis involves consideration of three threshold jurisdictional requirements followed by consideration of four discretionary factors set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). Section 1782 permits a district court to grant an application when: (1) the person from whom discovery

is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or an interested person. *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012).

If an application clears each of the three jurisdictional requirements, courts then look to four discretionary factors in deciding whether to exercise the authority conferred in Section 1782. The Supreme Court has stressed that "a district court is not required to grant a §1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. Instead, courts evaluate applications for discovery with reference to the following factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; and (4) whether the discovery requested is unduly intrusive or burdensome. See *In re Application of Republic of Turkey for an Order Under 28 U.S.C § 1782 to Conduct Discovery for Use in Foreign Legal Proceedings*, 2021 U.S. Dist. LEXIS 133119, 2021 WL 3022318, at *3 (N.D. Ill. July 16, 2021) (quotations omitted) (citing *Intel*, 542 U.S. at 264-65).

## ANALYSIS

In this case Venequip's application satisfies all three jurisdictional requirements because (1) Mustang resides or is "found" in the Southern District of Texas; (2) the

3

requested discovery is for use in a "foreign proceeding;" and (3) Venequip is an "interested person." *Tex. Keystone, Inc.*, 694 F.3d at 553. Mustang concedes this much and the question of whether to grant the application thus turns on the Court's evaluation of the discretionary factors. Having weighed the discretionary factors set out in *Intel*, the Court will deny Venequip's application.

The first discretionary factor identified by the Supreme Court in *Intel* is whether the person from whom the discovery is sought is a participant in the foreign proceeding. *Intel*, 542 U.S. 264. If so, the foreign jurisdiction could order the person to produce evidence and the need for a Section 1782 subpoena would be less apparent. *Id.*

It is undisputed that Mustang is not a party to the Swiss proceeding. On the other hand, Mustang has produced evidence that Venequip already has relevant information, proportionate to the claims made in the underlying contractual dispute, regarding Mustang's distribution of CAT equipment in Venezuela. Furthermore, Mustang contends that additional relevant information is accessible to Venequip in the Swiss proceeding. Mustang contends that Caterpillar Inc., CAT's parent company headquartered in Illinois, has agreed to produce this information in Switzerland once the case proceeds past its initial stages and Venequip has filed a statement of claim under Swiss procedural rules. *In re Venequip, S.A.*, No. MC 21-2090, 2022 WL 834780, at *8 (E.D. La. Mar. 21, 2022); *Venequip, S.A. v. Caterpillar, Inc.*, No. 21-CV-6297, 2022 WL 823856, at *2 (N.D. Ill. Mar. 18, 2022). While Section 1782 does not impose an exhaustion requirement— Venequip is not required to first seek the discovery in the Swiss proceeding—the Court

4

may consider in its analysis of this factor whether the information sought is available to Venequip in the Swiss proceeding. *In re Venequip, S.A.*, 2022 WL 834780, at *10.

The Court finds that on balance, the first factor weighs slightly in favor of Venequip. While Venequip undoubtably already has some of the requested information, there is no guarantee that Venequip will receive any additional information without the application being granted. This is true because there is, of course, a difference between relying on a non-party's promises to provide testimony and additional documents and a court order compelling that cooperation.

The second factor—"the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance —is neutral here. *Intel*, 542 U.S. at 264. Unlike the U. S., Switzerland is a civil law country and as U.S. courts have noted "discovery in U.S. courts can take place earlier and in a more robust manner than would be permitted under Swiss law." *Venequip, S.A.*, 2022 WL 823856, at *2. As noted below, in comparison to U. S. courts, Swiss courts allow very minimal pre-trial discovery and no pretrial depositions. The Court can find no clear guidance as to how Swiss authorities would consider the wholesale importation of American pre-trial civil procedure to allow the type of broad discovery—in multiple jurisdictions and from multiple non-parties— sought in this case.

The third factor—"whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions" or other foreign policies, *Intel*, 542 U.S. at 265— overwhelmingly favors Mustang. Courts may consider the parties' choice of law and forum

5

in assessing this factor. *See, e.g.*, *Banoka v. Westmont Int'l Dev. Inc.*, No. 21-20434, 2022 WL 480118, at *2-3 (S.D. Tex. Feb. 10, 2022), *aff'd sub nom. Bissonnet v. Westmont Int'l Dev., Inc.*, No. 21-20434, 2022 WL 636680 (5th Cir. Mar. 4, 2022). The agreements at the heart of the dispute between Venequip and CAT contain broad exclusive forum-selection clauses explicitly stating that "all disputes arising out of or related to this Agreement are to be submitted solely to the competent courts of the Canton of Geneva, Switzerland, with any appeals being to the Swiss Federal Supreme Court." (Dkt. 18-1 at 22 n.2). As an initial matter, the Court finds that the clause is broad enough to encompass this discovery dispute. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074–76 (3d Cir. 1997) (Alito, J.) ("To say that a dispute 'arise[s] ... in relation to' the 1990 Agreement is to say that the origin of the dispute is related to that agreement, *i.e.,* that the origin of the dispute has some 'logical or causal connection' to the 1990 Agreement."). That leaves the question of how the clause factors into the Court's analysis under *Intel*.

Courts have analyzed the effect of forum selection clauses in Section 1782 proceedings by examining whether the Section 1782 request conceals an attempt by the applicant to circumvent foreign proof-gathering restrictions or policies for which the parties specifically bargained. *See, e.g.*, *Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) ("Regardless of whether Aventis could have gotten the French Courts to compel production of the documents now sought, Aventis' motion is clearly an attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties in the choice of forum (France) clause."); *see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 595 (7th Cir. 2011) ("Other things to watch

6

out for [include] a forum-selection clause in a contract, which might indicate the parties' preference for a court system that doesn't contemplate the level of compulsory process available in America[.]"). The Court will apply this analytical framework.

The Court finds that, under the third *Intel* factor, the broad language of the parties' forum selection clause weighs against granting Venequip's Section 1782 application. By all appearances, Venequip is attempting to circumvent the bargained-for pre-trial discovery policies of Swiss courts. The differences between Swiss and U.S. procedural law, including with respect to pretrial discovery appear to be significant: Swiss courts allow very minimal pre-trial discovery and no pretrial depositions. In its briefing, Venequip does not dispute Mustang's contention that any request for the scope of discovery sought in this application would be rejected by the Swiss tribunal. There is certainly nothing in the record indicating that a Swiss tribunal would allow Venequip to conduct the type of in-depth pre-trial discovery from various Caterpillar dealers, customers, and former employees across the United States that it is attempting to do here, especially at this very early stage of the proceeding. Nor does Venequip contend that a Swiss tribunal would ever allow them to do so. Since the parties explicitly agreed to resolve all disputes related to the offer in the Swiss courts, this Section 1782 application has all the hallmarks of an attempted end-run around the forum selection clause. *See, e.g.*, *Banoka*, 2022 WL 480118, at *2., *aff'd sub nom*. *Bissonnet*, 2022 WL 636680.

The parties chose the Swiss courts as the exclusive forum for disputes in a broadly worded and exclusive forum selection clause. In light of that clause and the very limited availability of pre-trial discovery in Swiss courts, the Court concludes that the third *Intel*

7

factor weighs against Venequip. *See In re Jagodzinski*, No. 18-20606-MC, 2019 WL 1112389, at *7 (S.D. Fla. Jan. 15, 2019) ("Jagodzinski's failure to provide a reasonable explanation for his decision to first seek assistance from a United States federal court to obtain discovery—without first attempting to have the French tribunal overseeing his foreign proceeding rule on same—raises the specter of abusive litigation tactics."); *see also In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) ("Although courts need not determine if an applicant has exhausted its discovery attempts abroad, a perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.") (quotation marks omitted). !

The fourth discretionary factor of whether Venequip's discovery requests are "unduly intrusive or burdensome," weighs in favor of Mustang. *Intel*, 542 U.S. at 265. Venequip's requests span seventeen years, relate to multiple agreements beyond the scope of the Swiss proceeding, and essentially demand "all" documents and communications related to all sales of Mustang in Latin America. (See Dkt. 2-1, at Ex. A, Ex. B.) The "intrusiveness and burden of section 1782 disclosure are evaluated under the same standards that typically govern discovery requests under the Federal Rules of Civil Procedure." *Tex. Keystone Inc.*, 694 F.3d at 554. The Court finds these requests are not sufficiently tailored to the underlying contractual dispute and "disproportionate to the needs of the case." *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F. Supp. 3d 899, 907 (S.D. Tex. 2016). For example, this discovery includes requests for

8

deposition testimony regarding "any and all" communications Mustang had regarding its sales activities with numerous entities and individuals including:

(a) Petróleos de Venezuela (PdVSA) or any PdVSA affiliate;
(b) Any agency, department, instrumentality or part of the Venezuelan Government; and/or
(c) Any Venezuelan private entity

(Dkt. 2-2 at par. 2-5).

While the Swiss proceedings only concern the distribution of products in Venezuela, the application also seeks information regarding Mustang's activities in "Latin America broadly," and in Texas. (*See e.g.*, Dkt. 2-1 at par. 2-5; Dkt. 2-2 at par. 2-5). While Venequip argues that any burden from the requests could be eliminated by the Court through a meet and confer process, Venequip has offered no evidence that it has ever attempted to limit its discovery to a more reasonable scope through such efforts.

## CONCLUSION

For the foregoing reasons, the Court denies Venequip's application pursuant to 28 U.S.C. § 1782 to issue subpoenas for the taking of depositions and the production of documents from Mustang for use in its Swiss proceedings against CAT. Venequip's Section 1782 application (Dkt. 1) is **DENIED**. All other pending motions are **DENIED as MOOT**.

SIGNED at Houston, Texas on August 30, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE